UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 11-46-GWU

FAITH NICHOLE HALL, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

1

11-46  Faith Nichole Hall

          in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.     At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.     If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

      Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Faith Nichole Hall, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a bipolar disorder, an anxiety disorder, and attention deficit and hyperactivity disorder. (Tr. 49).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 51-53).  The Appeals Council declined to review, and this action followed.

11-46  Faith Nichole Hall

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 25, high school equivalency education, and lack of relevant work experience could perform any jobs if she had no exertional limitations, and was mentally limited to "simple to detailed" instructions, was able to sustain attention to complete repetitive, object-focused tasks, could tolerate coworkers and supervisors but had a limited but not precluded ability to be in contact with the public, and could adapt to routine changes.  (Tr. 24).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Id.).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff alleged disability due to a bipolar disorder, attention deficit disorder, attention deficit hyperactivity disorder, and manic depression, which she stated caused mood swings, an inability to "think straight," and a feeling of stress being around people.  (Tr. 87).  There is a large volume of evidence from prior to the alleged onset date of December 19, 2007 reflecting treatment for such conditions as oppositional defiant disorder (Tr. 160), a dysthymic disorder (Tr. 234), a bipolar disorder, personality disorder, and rule out post traumatic stress disorder (Tr. 242). In 2002, at the age of 18, a consultative psychological examiner, Dr. Gary Maryman, opined that while the plaintiff could understand, remember, and carry out

6

fairly simple instructions and tasks, she had a minimal ability to relate appropriately to fellow workers and supervisors and was not a good candidate for interacting and dealing with the general public on a regular basis.  (Tr. 234).  He felt that she could adjust and adapt only to medium or lower stress work and was not equipped to function in a more fast-paced and high pressure work atmosphere.  (Id.).

The only examining source opinion from after the alleged onset date came from Psychologist Jessica M. Huett, who conducted a consultative examination on behalf of the state agency on April 2, 2008.  (Tr. 289).  She noted that the plaintiff described a history of bipolar disorder and attention deficit hyperactivity disorder.  Dr. Huett noted that her motor activity was "restless" and she appeared to be anxious with "somewhat distractible" attention and variable concentration.  (Tr. 290-91).  Her facial expressions were tense, her affect was restricted, and her mood was pessimistic.  (Tr. 291).  She had difficulty interpreting simple proverbs and poor insight, and stated that she felt "out of whack" because she was off her medication.  (Id.).  She told the psychologist that Celexa had been helpful in the past, but she was apparently not taking it because she was 15 weeks pregnant.  (Tr. 290).  Dr. Huett listed an impression of a bipolar disorder, an anxiety disorder, and attention deficit hyperactivity disorder, with a Global Assessment of Functioning (GAF) score of 50.  (Tr. 292).  In terms of functional restrictions, Dr. Huett felt that the plaintiff would have a moderately limited ability to understand, remember, and carry out

simple instructions and sustain attention and concentration toward the performance of simple, repetitive tasks, but she would have a "marked" limitation in her ability to tolerate the stress and pressure of day-to-day employment and respond appropriately to supervision, coworkers, and work pressures in a work setting. (Id.). She did not think that the plaintiff could manage benefits in her own interest.

      A non-examining state agency psychologist, Dr. Steven Scher, completed a mental residual functional capacity (RFC) assessment form on April 24, 2008, indicating in Part I, designated "Summary Conclusions," that the plaintiff would have a moderately limited ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to respond appropriately to changes in the work setting. (Tr. 294-5). In Part III of the form, designated "Functional Capacity Assessment," Dr. Scher opined that the plaintiff's allegations of mental limitations with memory, concentration, task completion, understanding, following instructions, and getting along with others were partially credible. He noted that she had a lengthy psychiatric history. He felt that the marked limitations described by Dr. Huett were not fully supported by objective

8

evidence, noting that the plaintiff was the primary caretaker for her children although she gets some family support, could manage her activities of daily living and chores, and could drive independently. (Tr. 296). Additionally, he had previously cited a report from the Pulaski County Detention Center which stated that she had initially reported no problems on entry, June 27, 2006, but shortly before her release on October 14, 2007 she reported a mental health history and was started on medication. Dr. Scher stated that she retained the mental ability to understand and remember simple to slightly detailed instructions, sustain attention to complete repetitive, object-focused tasks, tolerate coworkers and supervisors with limited but not precluded public contact, and adapt to routine changes. (Id.). This wording was followed by the ALJ in the hypothetical questions. Although the instructions in Section III of the form request the reviewer to record the elaborations on the capacities listed in Section I, including any information which clarifies limitation or function, Dr. Scher did not reconcile his earlier indication that the plaintiff would have limitations in her ability to complete a normal workday and workweek and to perform at a consistent pace, or explain why he apparently concluded that she <u>could</u> tolerate supervisors with <u>no</u> particular restrictions after indicating that she would be "moderately limited" in her ability to accept instructions and respond appropriately to their criticism. (Tr. 295).

11-46  Faith Nichole Hall

Another non-reviewing state agency source, Dr. Ilze Sillers, completed a mental RFC assessment listing the same limitations in Part I (Tr. 326-27) and stating in Part III that she agreed with Dr. Scher (Tr. 328). She added that the third party limitations reported by the plaintiff's family were not fully supported by her ability to obtain a GED or by the Detention Center report that she was on work release while incarcerated. (Id.).

In his decision, the ALJ stated that he accepted the assessments of Drs. Scher and Sillers. (Tr. 52). He asserted that they were consistent with the weight of the medical evidence. (Id.). However, his summary of Dr. Huett's report abbreviated the psychologist's findings by saying that Dr. Huett had concluded she had moderate limitations of her ability to handle simple routine tasks. (Tr. 50). The ALJ said nothing about the marked limitations on stress and pressure and the ability to respond appropriately to supervision, coworkers, and work pressures. (Tr. 292).

The reliability of the ALJ's conclusions is cast into doubt by his failure to mention the restrictions in Dr. Huett's report. Even if the psychologist's opinion as a one-time examiner is not entitled to complete deference, it is difficult to see how the fact finder could conclude that the state agency opinions were consistent with the evidence without dealing with the discrepancy between Dr. Huett's conclusion and the non-examiners' conclusions. In addition, the rationale provided by the state agency examiners is dubious. In addition to failing to explain the internal

contradictions in their reports, Dr. Scher appeared to rely greatly on a very brief report from a nurse at the Pulaski County Detention Center which cryptically states that the plaintiff had initially denied a psychiatric history until she described it in October, 2007 and was put on medication.  (Tr. 281).  This summary is at least somewhat at odds with the copy of the plaintiff's actual medical request form, which reveals that the plaintiff <u>did</u> complain of her mental problems and added that "the jail had me on Prozac and I did not like the way it made me feel."  (Tr. 284).  If the jail was providing Prozac all along, it would appear that the Detention Center nurse was incorrect that mental problems were initially denied.

In view of the many discrepancies outlined above, the court concludes that it was erroneous for the ALJ to rely on the "Summary Conclusions" in the state agency mental RFC forms, as these conclusions were internally inconsistent and not based on substantial evidence.

The decision will be remanded for further consideration.

This the 22nd day of December, 2011.

**Signed By:**
<u>**G. Wix Unthank**</u>
**United States Senior Judge**